UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN JOSE HIDALGO GONZALEZ,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden of the Otay Mesa Detention Center; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; TODD BLANCHE, Acting Attorney General of the United States, U.S. Department of Justice,<br><br>Respondents. | Case No.:  26-cv-3561-GPC-GC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Juan Jose Hidalgo Gonzalez's petition for a writ of habeas corpus. ECF No. 1. For the reasons set forth below, the Court GRANTS the petition and ORDERS Petitioner's immediate release.

## BACKGROUND

Petitioner is a native of Venezuela who is currently detained at the Otay Mesa Detention Center in San Diego, California. ECF No. 1, ¶ 2. Petitioner presented himself for inspection at a United States port of entry in May 2023. *Id.* ¶ 4. Following inspection

by the Department of Homeland Security, Petitioner was granted parole into the United States and has resided here continuously since. *Id.* ¶ 5.

In March 2024, the immigration court terminated Petitioner's removal proceedings after determining that Petitioner was prima facie eligible for Temporary Protected Status ("TPS"). *Id.* ¶ 6. Petitioner's application for TPS was approved in August 2024. *Id.*

Respondents allege that Petitioner's parole was terminated and a new Notice to Appear was issued on June 22, 2026. ECF No. 3, at 2. Respondents detained Petitioner while Petitioner was making a food delivery to a military installation. ECF No. 1, ¶ 7. At no point prior to or following his re-detention did Petitioner receive an individualized custody determination hearing. *Id.* ¶ 8.

Petitioner now argues that his re-detention without any individualized custody determination hearing violates his Fifth Amendment due process rights and the Administrative Procedures Act. *Id.* ¶¶ 50–63.

## DISCUSSION

Respondents have filed a return to the petition. ECF No. 3. In the return, Respondents note that they have "determined that the legal issues presented concern the statutory authority for U.S. Immigration and Customs Enforcement's (ICE) detention of Petitioner under 8 U.S.C. §§ 1225(b)(2)(A) or 1226(a)." *Id.* at 1. Respondents continue that while they maintain that "Petitioner is subject to mandatory detention under § 1225(b)(2)," they acknowledge this Court's precedent indicating otherwise, and therefore do "not oppose the petition and defer[] to the Court on the appropriate relief." *Id.* at 2.

Respondents mischaracterize Petitioner's argument entirely. Petitioner does not argue that his detention should be governed by 8 U.S.C. § 1226(a) rather than § 1225(b)(2). Rather, Petitioner challenges the constitutionality of his re-detention without any individualized hearing.

To the extent that Respondents do not engage with the due process arguments contained in the petition and do not oppose the Petition, the Court interprets this silence as a concession. *See Mikhailovskii v. Semaia et al.*, No. 5:26-CV-0960-DSR, 2026 WL

26-CV-3561-GPC-GC

1196232, at *2 (C.D. Cal. Apr. 27, 2026) ("Respondents affirmatively stated in their Answer that they do not oppose the Petition, including Petitioner's due process claim. . . . Consistent with precedent, courts in this Circuit have regarded such silence as a concession."). Even so, the Court offers the below analysis as to the unconstitutionality of Petitioner's detention.

## I.    Petitioner's Detention Violates Due Process

Petitioner argues that his re-detention without notice or a chance to be heard violated his Fifth Amendment due process rights. ECF No. 1, ¶¶ 50–55. The Court agrees.

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Id.* at 693.

As applied to cases like Petitioner's: "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). *See also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). In fact, the government's initial release of an individual from custody "creates an 'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC

26-CV-3561-GPC-GC

(EMC), 2025 WL 2637503, *7 (N.D. Cal. Sept. 12, 2025). Thus, DHS may generally not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros* 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

When Petitioner was previously released from immigration custody on parole, he "took with him a liberty interest which is entitled to the full protections of due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty"). While Respondents note that Petitioner's parole has been terminated, Petitioner's liberty interest "did not expire along with Petitioner's parole agreement." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Rather, "[o]nce established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Id.*

Having determined that Petitioner maintains a protected liberty interest in remaining out of custody, the Court must next determine "what process is due." *Morrissey*, 408 U.S. at 481.

"The constitution typically 'requires some kind of a hearing *before* the State deprives a person or liberty or property.'" *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014274 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted sub nom. G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). To determine what procedures are required by due process, the Court evaluates the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976). *See Ortiz Donnis*, 2025 WL 2879514, at *12. Under *Mathews*, a court must consider (1) "the private interest" at stake, (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . .

of additional or substitute procedural safeguards," and (3) the "Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." 424 U.S. at 335.

As to the first *Mathews* factor, Petitioner has a significant private interest in his continued liberty. Indeed, "the more than two years that [he] has spent out of custody since ICE initially released [him] have only heightened [his] liberty interest in remaining out of detention." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). Thus, this factor favors Petitioner. *See Salcedo* 2025 WL 2637503, *12; *Ortiz Donis*, 2025 WL 2879514, at *12; *Pinchi*, 792 F. Supp. 3d at 1034-35.

Turning to the second *Mathews* factor, "it is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1035. Where, as here, Petitioner has not received any bond or custody hearing upon his re-detention, "'the risk for erroneous deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Id.* (quoting *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Further, courts have noted that "civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *G.S. v. Bostock*, 2025 WL 3014274, at *8. By releasing Petitioner on parole in 2023, immigration officers determined that he was neither a flight risk nor a danger to his community. *See id.*; *Ortiz Donis*, 2025 WL 2879514, at *1; *Pinchi*, 792 F. Supp. 3d at 1034. Respondents have not alleged that there has been a change in circumstance since Petitioner's 2023 release other than the termination of his parole. Thus, the risk of erroneous deprivation is particularly high in Petitioner's case, as there is no evidence of changed circumstances or that Petitioner is a danger or flight risk. Accordingly, this factor also favors Petitioner.

Finally, the Government "has failed to show any countervailing interest against providing a pre-detention hearing." *G.S. v. Bostock*, 2025 WL 3014274, at *9; *Salcedo*

26-CV-3561-GPC-GC

*Aceros*, 2025 WL 2637503, at *12. Indeed, "in immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (internal quotation marks and citation omitted). There is also no concern that a hearing will delay or obstruct Respondents efforts to remove Petitioner, as Petitioner's removal proceedings have been terminated due to Petitioner's eligibility for Temporary Protected Status, which Petitioner has since received. ECF No. 1, ¶ 6. In sum, the Government's interest in detaining Petitioner without a hearing is low. *Singh*, 2025 WL 1918679, at *8.

Each of the *Mathews* factors favors Petitioner. Thus, Petitioner was entitled to a pre-deprivation bond hearing. The Government detained Petitioner, without explanation and without notice, despite its own prior determination that Petitioner was not a flight risk and posed no danger to the community. "Under these circumstances, given the government's conduct, the substantial liberty interests held by [Petitioner], and the fact that the government has no evidence and does not contend that [Petitioner] presents [a] risk or flight or to public safety, a pre-deprivation bond hearing is warranted." *Salcedo* 2025 WL 2637503, *12. At such a hearing, the government must demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight. *Pinchi*, 792 F. Supp. 3d at 1038; *see also Ortiz Donis*, 2025 WL 2879514, at *15. Put simply: "since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Ortiz Donis*, 2025 WL 2879514, at *15.

In light of such a violation, Petitioner's release from custody is the appropriate remedy. *See*, *e.g.*, *Quiroz v. Larose*, No. 26-CV-866 JLS (DEB), 2026 WL 673822, at *3 (S.D. Cal. Mar. 10, 2026); *Aliyev v. LaRose*, No. 3:26-CV-01119-CAB-JLB, 2026 WL 699818, at *3 (S.D. Cal. Mar. 12, 2026); *Devilmar v. LaRose*, No. 3:26-CV-01748-JES-MSB, 2026 WL 1042439, at *2 (S.D. Cal. Apr. 17, 2026); *Perez*, 2026 WL 102643, at *2.[1]

---

[1] Having reached this conclusion on Petitioner's due process claims, the Court declines to reach the merits of Petitioner's Administrative Procedures Act claims.

26-CV-3561-GPC-GC

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- The Court GRANTS the petition for writ of habeas corpus, ECF No. 1.

- The Court ORDERS Respondents to release Petitioner from custody immediately. Respondents SHALL NOT impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a later custody hearing.

- Respondents SHALL NOT re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not detained.

- The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated:  June 24, 2026

Hon. Gonzalo P. Curiel
United States District Judge

26-CV-3561-GPC-GC